```
UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        )
                                )
       v.                       )
                                )   No. CR-03-40238-DLJ
                                )
                                )
                                )   ORDER
CHARLES ROSE,                   )
                                )
              Defendant.        )
_____)
```

On December 5, 2008, defendant Charles Rose ("Rose") filed a motion to dismiss on the ground that the government violated the Interstate Agreement on Detainers Act ("IAD").  On December 23, 2008, the government filed an opposition.  On January 9, 2009, the Court heard oral argument.  Having considered the papers submitted, the arguments of counsel, and the applicable law, the Court hereby DENIES the motion.

**I. BACKGROUND**

**A.   Factual Background and Procedural History**

On December 11, 2003, Rose was indicted for one count of escape from federal custody in violation of 18 U.S.C. 751(a).  A warrant was issued for his arrest.

The circumstances giving rise to Rose's indictment for escape are as follows.  On June 13, 2001, Rose was sentenced to thirty-seven (37) months in custody following his conviction for being a felon in possession of a firearm in case number CR-00-40160-SBA.  Near the end of his custodial sentence, the Bureau of Prisons transferred Rose from FCI Lompoc to the Cornell Community

Corrections Center in Oakland to complete his prison term. On December 29, 2002, Rose allegedly walked away from Cornell and never returned. Based on these circumstances, Rose was indicted for escape.

In the summer of 2007, while he was still a federal fugitive, Rose was convicted of forgery in Arizona state court and sentenced to Arizona state prison. On October 3, 2007, the United States Marshal lodged a detainer with the Arizona prison based on the federal warrant for Rose for the escape charge.

The language of the form detainer used by the Marshal's Service, Form USM-17A, and the manner and timing of its execution, are central to Rose's claim under the IAD.

Section one of the form is an instructions section. This section notifies the prisoner of the charges for which the detainer was issued. The section also notifies the prisoner that, under the IAD, he has a right to a trial within 180 days after he has "caused to be delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court" written notice of his "request for a final disposition of the charges."[1] The section emphasizes that "the 180-day time limit does not commence until your written notice of request for final disposition of the charges against you has actually been delivered to the appropriate U.S. Attorney and the

---

[1] Although the IAD is titled the Interstate Agreement on Detainers Act, the federal government is a participating entity. See 18 U.S.C. app. 2 § 2, art. II, subsec. (a).

2

appropriate U.S. District Court." Last, the section informs the prisoner that he must "periodically inquire" as to the status of his speedy trial demand.

Section three of the form is an acknowledgment section to be executed by the prisoner. In this section, the prisoner confirms, in language nearly identical to the language of the instructions section, that the prisoner is aware of his right to a trial within 180 days and therefore the prisoner can make a request for trial. The prisoner is also informed that any demand for a speedy trial must actually be delivered in order to be effective, and that he must periodically inquire as to the status of the demand.

Last, section four of the form directs the institution receiving the executed form from the prisoner to return one copy of the form to the U.S. Marshal in those cases where the inmate does not request a trial. In the event the inmate requests a speedy trial, the section instructs the institution to send additional copies of the executed request for trial, along with a so-called certificate of inmate status, by registered or certified mail, to the U.S. Attorney for the Northern District of California and the U.S. District Court for the Northern District of California, where the charges against him are pending.

The first page of the detainer form contains, in large, bold, all-capital, and diagonally-offset lettering, an instruction to the institution receiving the detainer to return one copy of the form

to the U.S. Marshal's office which has lodged the detainer.

After receiving the detainer, prison officials provided the papers to Rose on October 5, 2007. Rose executed the papers on October 11, 2007 and marked the appropriate fields requesting a speedy trial. On October 12, 2007, officials at the Arizona prison mailed copies of the executed detainer to the U.S. Marshal's offices in Phoenix and in Oakland. The office in Phoenix received the executed form on October 23, 2007. Employees of the Phoenix Marshal's office faxed and mailed additional copies of the executed form to the Oakland Marshal's office. The Oakland office received the executed forms sometime in late October or early November of 2007.

There is no record of the institution ever sending a copy of the executed request for speedy trial to the District Court or the U.S. Attorney for the Northern District of California. There is no record of the U.S. Marshal in Oakland ever forwarding a copy of the executed form to the U.S. Attorney's office, or to the Court in the Northern District of California. Additionally, there is no record of the Arizona prison ever sending a certificate of inmate status to the U.S. Attorney or to the District Court.

After Rose executed the request for speedy trial, he mailed a series of letters to this Court. On February 22, 2008, the Court received a letter from Rose in which Rose stated, "Now I understand that there is a 180 day time limit for me to be tried prior to my

4

demand for a speedy trial under the Interstate Agreement on Detainers Act (IAD)."  The letter did not include any information identifying the escape charge which was pending against him or provide its case number.  On February 26, 2008, the clerk of the Court e-filed[2] this letter in case number CR-00-40160-SBA, the original firearms case.  Although the letter did not identify the escape case, it is apparent that was the intent of the defendant and it should have been filed as part of the escape case file, CR-03-40238-DLJ.

On August 11, 2008, Rose sent another letter making reference to the IAD, and this time the letter included a specific reference to the pending escape charge and its case number.  This letter was e-filed under the corresponding escape case number.

On August 20, 2008, the U.S. Attorney's office petitioned for a writ of habeas corpus ad prosequendum to bring Rose to the Northern District of California.  Rose made his initial appearance before this Court on September 26, 2008.

**B.     Legal Standard**

The IAD is an agreement between a number of states, the United States, and the District of Columbia which creates uniform procedures for lodging and executing a detainer by one participating jurisdiction against a prisoner held in another.

---

[2] E-filing procedures of the Court result in email copies of the matter filed being sent to the District Court, the U.S. Attorney, and the defense attorney.

<u>Alabama v. Bozeman</u>, 533 U.S. 146, 148 (2001).

Article III of the IAD provides that, whenever a prisoner is in custody and a prosecuting official from another IAD participating jurisdiction issues a detainer against the prisoner, the prisoner:

> shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment.

18 U.S.C. app. 2 § 2, art. III, subsec. (a). The section further provides:

> The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

<u>Id.</u>

The prisoner's request must be forwarded, by registered or certified mail, by the official having custody of the prisoner. <u>Id.</u> subsec. (b).

The 180-day time period does not begin until the prisoner's speedy trial request "has actually been delivered to the court and

prosecuting officer of the jurisdiction that lodged the detainer against him." Fex v. Michigan, 507 U.S. 43, 52 (1993). If the prisoner establishes that the government has violated his right to a speedy trial under the IAD, the presiding court may dismiss the case with or without prejudice depending on the "seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." 18 U.S.C. app. 2 § 9(1).

## II. DISCUSSION

The issue in this case is whether Rose's speedy trial demand was "actually delivered" to the U.S. Attorney's office and the Court, and if so, when. For the reasons discussed below, the demand was not actually delivered to the U.S. Attorney's office or to the Court. As a result, Rose's motion fails.

**A.    Delivery to the U.S. Attorney**

    **1.    Form USM-17A**

The parties do not dispute that the U.S. Attorney never received a copy of the Form USM-17A. Rose argues, however, that because the U.S. Marshal received a copy, that receipt should be imputed to the U.S. Attorney under United States v. Johnson, 196 F.3d 1000 (9th Cir. 1999).

In Johnson, after a detainer was lodged, the prisoner received the detainer form, executed an IAD speedy trial demand,

7

and returned it to the warden of his prison. Id. at 1001. The warden mailed the form to the U.S. Marshal, as directed by the instructions on the form, but the U.S. Attorney never received the executed papers from the Marshal. Id.

The Ninth Circuit held that the prisoner satisfied his obligations under the IAD even though the demand was never actually delivered to the U.S. Attorney. Id. at 1003. The detainer in Johnson instructed the prison officials to return the form to the Marshal's Service. Id. The court reasoned that if the U.S. Attorney's office relied on the U.S. Marshal as its agent for delivering and returning the form, the U.S. Attorney had to accept responsibility for any complications that arose out of that arrangement. Id. The court concluded that where "the U.S. Attorney uses the Marshal's Service to serve a detainer and instructs that the return be made to the Marshal's Service, delivery of the speedy trial request to the Marshal's service is delivery to the U.S. Attorney under the IAD." Id.

The facts in this case are different. Here, unlike in Johnson, the Marshal's Form USM-17A contained an explicit instruction to return the executed form directly to the U.S. Attorney. Absent an instruction to return the form solely to the Marshal's Service, the rationale of Johnson is inapplicable.

In his motion, Rose essentially concedes as much. He argues, however, that the Form USM-17A contains conflicting instructions

8

and is therefore confusing.  As Rose notes, the front page of the form contains a conspicuous instruction to "EXECUTE AND RETURN THIS COPY TO THE USMS ASAP."  At first glance, this request appears to conflict with the instructions in section four of the form, which request that a copy be sent directly to the U.S. Attorney.

Contrary to Rose's view, however, there is no conflict. Section four of the form instructs the holding facility to return one copy of the form to the Marshal's Service.  If, and only if, the prisoner requests a speedy trial, the holding facility is asked to send an additional copy to the U.S. Attorney.  As a result, regardless whether the prisoner requests a speedy trial, one copy of the executed detainer must <u>always</u> be returned to the Marshal's Service.  This instruction is consistent with the bolded request on the front of the form.  Accordingly, the form creates no confusion.

In this case, there is no evidence that the Form USM-17A was ever actually delivered to the U.S. Attorney's office or the District Court by the U.S. Marshal or the state institution, with the result that the <u>Fex</u> requirement of actual delivery has not been established.

**2.   February 22, 2008 Letter**

The Court notes that the U.S. Attorney's office received explicit notice of Rose's speedy trial demand on February 26, 2008, when the clerk e-filed Rose's February 22, 2008 letter.  As noted, in this letter, Rose specifically articulated his right to a speedy

trial under the IAD.  In addition, the return address on the envelope, which was e-filed by the clerk along with the letter, states that Rose was incarcerated at Arizona State Prison Complex Lewis in Buckeye, Arizona.  Although the actual case upon which the detainer was lodged is not identified, combining this letter and its envelope along with some rudimentary investigation would provide information that will at least substantially satisfy the requirement that Rose provide notice of (1) his place of imprisonment and (2) his request for a final disposition to be made of the indictment, information, or complaint.  See 18 U.S.C. app. 2 § 2, art. III, subsec. (a).  The letter also satisfies the requirement of the Form USM-17A that Rose periodically inquire as to the status of his speedy trial demand.  The government does not dispute that it received this letter on February 26, 2008, when the clerk posted the letter on the Court's e-filing system.  Because the provisions of the IAD are to be "liberally construed so as to effectuate [their] purposes," there is some merit to the notion that the February 22, 2008 letter sufficiently notified the U.S. Attorney of Rose's speedy trial demand.  18 U.S.C. app. 2 § 2, art. IX.

    As noted above, however, subsection (a) of Article III provides that the U.S. Attorney must receive a certificate of inmate status via certified or registered mail.  18 U.S.C. app. 2 § 2, art. III, subsecs. (a)-(b).  There is no dispute that the

10

Arizona prison officials failed to provide a certificate in this case.

The Court is not aware of any Ninth Circuit precedent which expressly holds that these requirements must be met in order for a prisoner's speedy trial demand to be effective. However, the IAD imposes these requirements, and the Court sees no reason why it should overlook these obligations. See, e.g., United States v. Dent, 149 F.3d 180, 186 (3d Cir. 1998) ("invocation of Article III's 180-day time limit generally requires strict compliance with the Article's requirements"). Accordingly, even though the U.S. Attorney received the substance of Rose's speedy trial demand, such notice did not completely satisfy the procedural requirements of the IAD as to notification to the U.S. Attorney.

**B.   Delivery to the Court**

Rose also failed to deliver his speedy trial demand to the Court. The parties do not dispute that the Arizona prison failed to mail, via registered or certified mail, a copy of the executed Form USM-17A to the Court. There is also no dispute that the Court has never received a certificate of inmate status.

Rose contends, however, that his February 22, 2008 letter provided sufficient notice to the Court. Although the letter does not reference the case upon which the detainer was lodged, and the letter ended up in a Court chambers where the escape charge was not pending, for much the same reasons that apply to the question of

11

notice to the U.S. Attorney, it is arguable that he letter conveyed the substance of Rose's speedy trial demand to the Court.

The Court concludes, however, that the form of Rose's notice was inadequate. In <u>Johnson</u>, <u>supra</u>, the court held that a single sentence, contained in a letter from Johnson's public defender to the district court, sufficed to deliver Johnson's demand to the court. The sentence read as follows: "[Johnson] is currently serving a sentence in the state of Washington and has made a request for a speedy trial on the above referenced charge." <u>Johnson</u>, 196 F.3d at 1001-02.

In finding this sentence sufficient under the IAD, the <u>Johnson</u> court stressed that there was never "any expectation or practice of sending the Form USM-17 directly to the court." <u>Id.</u> at 1004. By contrast, in this case, the Form USM-17A contained an explicit instruction to send the form directly to the court via registered or certified mail. Accordingly, the rationale of <u>Johnson</u> is inapplicable here.

As has already been noted, the Arizona officials also failed to provide a certificate of inmate status to the Court. Although the court in <u>Johnson</u> overlooked the omission of the certificate, it does not appear that the government in that case objected to the oversight. <u>See</u> <u>id.</u> at 1003-04. In this case, by contrast, the government objects to the absence of the certificate.

In sum, Rose has failed to show that he is in technical

12

compliance with the requirements of the IAD as to notice to the District Court.

**C.     Dismissal With or Without Prejudice**

Even if the Court found that the government violated Rose's rights under the IAD, the question would remain whether to dismiss the case with or without prejudice.

The Court believes that any dismissal of this case under the IAD would be without prejudice.  In this case, the delay attributable to the government was approximately one month beyond the 180 day limit.  Assuming, for example, the Court found that Rose executed actual delivery of his demand on February 26, 2008, Rose's initial appearance on September 26, 2008 was 213 days later.  This delay is of little significance, particularly where it is also of note that there is already a delay of almost five years from the fugitive status of the defendant.

In addition, Rose has suffered no prejudice from the delay.  Rose's ability to defend the escape case does not appear to have been hampered by the loss of witnesses for the defense, as he is himself the central percipient witness to the circumstances of the escape.  It is sometimes argued that an early disposition can sometimes permit sentencing courts to consider concurrent sentences.  That possibility, although diminished when escape charges are at issue, still remains as the defendant has not yet completed his Arizona state time or his federal time on the

13

firearms charge.

### III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES the motion.

IT IS SO ORDERED.

Dated: February  4, 2009      
　　　　　　　　　　　　　　　　D. Lowell Jensen
　　　　　　　　　　　　　　　　United States District Judge